IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CLEOPHUS YOUNG,    #11586-002, | ) Civil Action No.  3:07-1333-GRA-JRM |
| Plaintiff, | ) |
| vs. | ) |
| MR. LUSK, FOOD SERVICE ADMINISTRATOR; | ) |
| MR. ASHLINE, FOOD SERVICE ASSISTANT ADMINISTRATOR; | ) |
| MR. C. COWIN, FOOD SERVICE SUPERVISOR; AND | ) |
| MR. SHILLING, FOOD SERVICE SUPERVISOR, IN OFFICIAL AND PERSONAL CAPACITIES, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |

Plaintiff filed this action, pro se, on May 9, 2007.[1]  At the time he filed this action, Plaintiff was an inmate at the Federal Correctional Institution in Estill, South Carolina ("FCI-Estill").  On June 12, 2007, Plaintiff filed a motion for a temporary restraining order and preliminary injunction with supporting materials.  Defendants are Henry Lusk ("Lusk"), the Food Service Administrator at FCI-Estill; Sean Ashline ("Ashline"), the Assistant Food Service Administrator at FCI-Estill; D. Couick ("Couick"), the Food Service Supervisor at FCI-Estill; and R. Scheller ("Scheller"), a Food Service Supervisor at FCI-Estill.[2]  On November 6, 2007, Defendants filed a motion to dismiss or in the alternative for summary judgment.  Plaintiff, because he is proceeding pro se, was advised

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC.  Because these are dispositive motions, this report and recommendation is entered for review by the court.

[2] Defendants provide that it appears that the defendant identified as "C. Cowin" is actually D. Couick and the defendant identified as "Schilling" is actually R. Scheller.  Defendants' Motion for Summary Judgment, at 2.

on November 29, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion to dismiss or for summary judgment could result in the dismissal of his complaint. The Roseboro order was returned as undeliverable and Plaintiff has not filed a response to Defendants' motion for summary judgment.[3]

## MOTION FOR TEMPORARY RESTRAINING ORDER

On June 11, 2007, Plaintiff filed a motion for a temporary restraining order and "preliminary judgement." He claims he is not receiving a diabetic diet as prescribed by physicians and the lack of this diet has caused him "physical and mental pain and suffering and increasing risk of death." Plaintiff requests that the court order he be provided with a diabetic diet. Defendants, in their motion to dismiss or in the alternative for summary judgment, contend that Plaintiff's claims for injunctive relief should be denied because Plaintiff is no longer an inmate at FCI-Estill.[4]

The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a) plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
> (c) the injury to defendant if an injunction is issued; and

---

[3] In preparing this report and recommendation, the undersigned has considered the exhibits attached to Plaintiff's Complaint and the exhibits and declaration submitted as part of Plaintiff's motion for a temporary restraining order.

[4] Jenifer Grundy Hollett, an attorney for the Federal Bureau of Prisons, states that Plaintiff's records indicate that he was released from FCI-Estill on August 16, 2007. Hollett Decl., Para. 3. Despite being ordered to keep the Clerk of Court advised of writing of any changes in his address and being warned that this action could be dismissed for a failure to do so (see Doc. 11), Plaintiff has not provided any notification of a change in his address.

      (d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted. Manning, 119 F.3d at 263; North Carolina State Ports Auth., 592 F.2d at 750.

      A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

      It is recommended that Plaintiff's motion for a temporary restraining order and preliminary injunction be denied. As Plaintiff is no longer detained at FCI-Estill, his claims for injunctive relief are moot. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); and Ross v. Reed, 719 F.2d 689 (4th Cir. 1983). Plaintiff's motion should be also denied because Plaintiff is unlikely to be successful in the underlying dispute between the parties and is unlikely to suffer irreparable injury if interim relief is denied, as discussed below.

## DISCUSSION

      Plaintiff appears to have brought his claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971). In Bivens, the Supreme Court

established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982). Harlow, which is often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in Harlow, the Supreme Court stated that Harlow was applicable to state officials sued under 42 U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in Bivens actions and vice versa. Farmer v. Brennan, 511 U.S. 825 (1994); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Osabutey v. Welch, 857 F.2d 220, 221-223 & n. 5 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 & n. 2 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).

Plaintiff alleges that Defendants subjected him to cruel and unusual punishment and discrimination because they failed to provide him with a proper pre-plated diabetic diet. He also claims that he was discriminated against because certain inmates were provided pre-plated diets based on their religious needs. Defendants contend that: (1) this court lacks subject matter jurisdiction to hear Plaintiff's claims against Defendants in their official capacities; (2) Plaintiff failed to properly serve Defendant Ashline;[5] (3) Plaintiff failed to exhaust his available

---

[5] Defendants assert that Plaintiff was responsible for service, as he paid the filing fee in this action. Review of this action, however, reveals that the undersigned authorized service of this action without prepayment of the filing fee. The United States Marshal was directed to serve the complaint upon Defendants. See Doc. 11.

4

administrative remedies;[6] (4) the pleadings do not state a claim upon which relief can be granted; (5) the claims fail to comport with the requirements of Rule 8(a); (6) the individual defendants are entitled to qualified immunity; (7) negligence does not state a valid constitutional claim;[7] (8) Plaintiff fails to establish an Eighth Amendment violation; (9) Plaintiff fails to establish an equal

---

[6]Defendants contend that Plaintiff failed to exhaust his available administrative remedies as to his Bivens claims. The BOP has a three-tiered administrative grievance process. See 28 C.F.R. §§ 542.10 et seq.; see also Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md.1997). An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the Warden. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. Id. If dissatisfied with the response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. Id. Appeal to the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a). A claim has not been administratively exhausted until it has been filed with the General Counsel. Administrative complaints must be filed within 20 days of the date of incident giving rise to the complaint occurred. 28 C.F.R. § 542.14(a).

Defendants provide that Plaintiff filed a request for informal resolution, asserting that he was not provided with adequate food to meet his medical dietary needs. After being advised of the procedures for self-selection of diabetic diet appropriate food, Plaintiff filed a request for administrative remedy at the institutional level. He received a response from the Warden dated October 2, 2006, and submitted a regional appeal of the decision on October 17, 2006. The appeal was rejected on October 19, 2006, due to Plaintiff's failure to provide the required number of copies of the submitted attachments. Plaintiff was afforded the opportunity to correct the problem and refile within 10 days. Plaintiff attempted to refile his appeal on November 6, 2006, but the submission was rejected as being outside the extended time to resubmit his appeal. Plaintiff was advised he could resubmit if he could obtain staff verification that the delay in re-filing was not his fault. Plaintiff did not resubmit, made no further attempts to appeal, and lodged no other administrative filings on the issue. Defendants' Motion for Summary Judgment, Exs. A, C, and D.

[7]Negligence, in general, is not actionable under 42 U.S.C. § 1983 or under the Bivens doctrine. See Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); and Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987).

5

protection claim; (10) supervisor liability does not attach in this case;[8] and (11) Plaintiff's claim for injunctive relief is moot.

   1.  Official Capacity Claims

   Defendants contend that this court lacks subject matter jurisdiction to hear Plaintiff's claims against Defendants in their official capacities. This court lacks subject matter jurisdiction as to Plaintiff's Bivens claims against Defendants in their official capacities. The United States cannot be sued without its consent, and consent is a prerequisite to a suit against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983). The United States has not consented to suit under the Bivens doctrine. The bar of sovereign immunity cannot be avoided by naming officers or employees of the United States as defendants. Gilbert v. Da Grossa, 756 F.2d 1455, 1458 (9th Cir. 1985); cf. Hawaii v. Gordon, 373 U.S. 57, 58 (1963). Claims against Defendants in their official capacities are barred by the doctrine of sovereign immunity. See Hagemeier v. Block, 806 F.2d 197, 202 (8th Cir. 1986), cert. denied, 481 U.S. 1054 (1987); Gilbert, 756 F.2d at 1458.

   2.  Eighth Amendment

   Plaintiff alleges that he was subjected to cruel and unusual punishment because Defendants failed to provide him with an adequate diabetic diet and refused to provide him with

---

[8]The doctrine of respondeat superior generally is inapplicable to § 1983 and Bivens actions, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982); Wright v. Smith, 21 F.3d 496 (2d Cir. 1994); and Howard v. Federal Bureau of Prisons, 1999 WL 798883, 198 F.3d 236 (4th Cir. 1999)[Table]. Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

specially plated meals. He appears to assert a claim for medical deliberate indifference. Defendants contend that Plaintiff fails to show that they were deliberately indifferent to any of his serious medical needs.

Defendants provide that Food Service operations at FCI-Estill serves three meal each day to the inmate population. The meals consist of a main food line with entrees and other portion controlled items and a food bar with various food items that inmates may self-select. The main food line includes two meal options, the regular menu items or the heart healthy alternatives. Heart healthy options are prepared in a more nutritious manner (no frying or breading) without the addition of salt or fat. Defendants' Motion for Summary Judgment, Ex. E (Program Statement 4700.05, Food Service Manual); Ashline Decl., Para. 5; Lusk Decl., Para. 4.

At FCI-Estill, inmates on medical diets are provided food options from which they self-select items in accordance with their medical dietary requirements. Pre-plated medical diets are not provided at FCI-Estill. All prepared items on the main line contain informational cards listing calories, fat, cholesterol, and sodium content. When going through the main food line, inmates who wish to be served the heart healthy options are provided those alternative items. The menus at FCI-Estill have been reviewed and approved by a dietician. Defendants provide that insulin-dependent diabetic inmates are able to meet their dietary requirements through self-selection of food items from the main line and food bars. Insulin-dependent inmates who properly follow medical advice concerning their diet choose the heart healthy entrees and other main line items that are prepared in a more healthy manner. Defendants' Motion for Summary Judgment, Exs. D and E; Ashline Decl., Paras 5, 6, 10; Lusk Decl., Paras. 4, 7, and 10; Couick Decl., Paras. 6, 7, and 10; Scheller Decl., Exs. 5, 6, and 9.

7

Scheller states that Plaintiff had a card issued to him by medical staff which indicated he was a diabetic and allowed him to eat at the "short line," the early seating for each meal, to ensure that he had the ability to eat at the same times each day. Plaintiff was also provided with a "diabetic snack" to take with him to his cell after the evening meal in order to have appropriate food to eat when taking evening insulin. Scheller Decl., Paras. 11-12; Lusk Decl., Para. 6.

Ashline states that he instructed Plaintiff on how to meet diabetic diet needs through self-selection from various menu items, including the heart healthy menu and the provided no-sugar foods. Ashline Decl., Paras. 12. Lusk states that he himself is diabetic and spoke with Plaintiff on several occasions about how to make proper food choices. He states that he personally walked Plaintiff through a meal selection to show Plaintiff the healthier alternatives and proper portioning. Lusk Decl., Paras. 11-13. Couick states that on occasion he prepared a tray for Plaintiff using the heart healthy food items from the main food line to demonstrate the types of foods and proper portions, spoke with Plaintiff about the need to avoid sugary foods; and spoke with Plaintiff about the need to eat after taking insulin. Couick Decl., Para. 12.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or

8

> intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An

>act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. The exhibits submitted by Plaintiff with his Complaint and Declaration indicate that he was informed that he was supposed to follow an 1800 calorie diabetic diet. The diabetic diet he attached to his Complaint specifically advises him on how to "choose" food to consume. Thus, this exhibit supports a diet where the diabetic patient is to take control of his own food selection. The evidence submitted by Defendants indicates that Plaintiff was provided with a diet that allowed for the self-selection of foods appropriate to his prescribed diet. Further, Defendants provided dietary teaching to allow Plaintiff to make appropriate food selections. Plaintiff fails to show that the actions of Defendants constituted deliberate indifference. See Carrion v. Wilkinson, 309 F.Supp.2d 1007, 1014 (N.D. Ohio 2004)(no deliberate indifference where prison staff explained the need to self-select appropriate foods from the food lines); see also Williams v. Hartz, 43 Fed Appx. 964, 966, 2002 WL 1378877 (7th Cir. 2002); Owens-El v. Robinson, 442 F. Supp. 1368, 1391 (D.C.Pa. 1978)(allowing diabetic inmate to self-select from food items is appropriate).

Plaintiff, in his motion for a temporary restraining order, attached copies of medical records indicated that he received treatment at various hospitals for his diabetes. All but one of these were prior to his incarceration at FCI-Estill. Couick states that he has on occasions received radio transmissions from medical staff advising him that Plaintiff has been given insulin. He states that after receiving insulin, Plaintiff should have reported to Food Services to eat, but frequently did not. Couick states that on at least one occasion, Plaintiff intentionally ate multiple pre-packaged sweet rolls, which caused him to require emergency medial attention at the local hospital. Couick Decl., Paras. 13-14. The records submitted by Plaintiff indicate that he did receive medical attention for that episode and the hospital discharge instructions merely instruct him to follow up with his institution, continue taking his prescribed medications, and follow an 1800 calorie diabetic diet.

Plaintiff, in his motion for a temporary restraining order, cites Johnson v. Harris, 479 F. Supp. 333 (S.D.N.Y. 1979), to support his claim that Defendants were deliberately indifferent to his need for a diabetic diet. The diabetic inmate in Johnson presented evidence that he (Johnson) made substantial efforts to achieve a proper diet by foregoing certain foods and seeking substitutes, but his efforts were hindered by prison authorities. This case, however, is distinguishable from Johnson. Defendants here have presented evidence that they provided an array of foods, including items that were appropriate for a diabetic diet, and took steps to ensure that Plaintiff was aware of how to obtain foods that met his medical dietary requirements.

    3.    Discrimination/Equal Protection

Plaintiff alleges that he was discriminated against because Defendants refused to provide him with specially plated diabetic meals, but the "Ethnic attributde [sic] Group known as 'Common fair'" received preselected meals. Complaint at 3. Defendants contend that Plaintiff fails

11

to establish a discrimination or equal protection claim because he has not shown that he was a member of a protected class and has made only conclusory allegations of discrimination which are insufficient to state a claim. They admit that inmates with religious dietary needs are provided a special religious diet because of the unique food preparation requirements of Judaic and Muslim diets. Defendants provide that the Bureau of Prisons implemented a certified food component to its food service operation such that inmates on special religious diets receive prepackaged meals that carry a certification addressing requirements concerning utensils and equipment that come into direct contact with food. Additionally, special accommodations are made during the month of Ramadan, so that Muslim inmates may fast and still eat the appropriate meals each day. Defendants' Ex. E. Plaintiff has presented no legal basis for a discrimination claim. He may be attempting to assert an equal protection claim. An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. See Turner v. Safley, 482 U.S. 78, 89 (1987). Here, Plaintiff, has not asserted

that he is a member of a suspect class[9] and has not shown that similarly-situated persons are treated differently.

    4.    <u>Qualified Immunity</u>

Defendants contend that they are entitled to qualified immunity. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert.</u> <u>denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated his established

---

[9]Even if Plaintiff could show that he was "disabled", disabled individuals are not a suspect or quasi-suspect class entitled to special protection under the Equal Protection Clause. <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 442-47 (1985) (concluding that the mentally disabled are not suspect or quasi-suspect class); <u>Brown v. North Carolina Dep't of Motor Vehicles</u>, 166 F.3d 698, 706 (4th Cir. 1999)(extending <u>Cleburne</u> to all disabled individuals).

constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Defendants' motion to dismiss or in the alternative for summary judgment (Doc. 35) be granted. It is also recommended that Plaintiff's motion for a temporary restraining order and to dismiss (Doc. 11) be denied.

>Respectfully submitted,
>
>Joseph R. McCrorey
>United States Magistrate Judge

January 8, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice**.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

15